JS 44 (Rev. 11/04)                    **CIVIL COVER SHEET**                    APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

AAMCO Transmissions, Inc.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
201 Gibraltar Road, Horsham, PA 19044
610-668-2900

**DEFENDANTS**

Todd Cox

County of Residence of First Listed Defendant   San Antonio
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
        LAND INVOLVED.

Attorneys (If Known)
unknown

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |      Liability  ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |      Slander  ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |       Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |      Liability      Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine |      Safety/Health |  | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |      Liability  **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) |       Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending |      Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |      Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI |       12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |      Injury  ☐ 385 Property Damage |      & Disclosure Act |  | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** |      Product Liability | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 510 Motions to Vacate | ☐ 791 Empl. Ret. Inc. |       or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment      Sentence |       Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | ☐ 443 Housing/      **Habeas Corpus:** |  |       26 USC 7609 |       Act |
| ☐ 245 Tort Product Liability |      Accommodations  ☐ 530 General |  |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 444 Welfare  ☐ 535 Death Penalty |  |  |       Under Equal Access |
|  | ☐ 445 Amer. w/Disabilities -  ☐ 540 Mandamus & Other |  |  |       to Justice |
|  |      Employment  ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of |
|  | ☐ 446 Amer. w/Disabilities -  ☐ 555 Prison Condition |  |  |       State Statutes |
|  |      Other |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      another district
      (specify)

☐ 6 Multidistrict
      Litigation

☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C.A. §§1114 and 1125

Brief description of cause:
Trademark Infringement - terminated franchise

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):     JUDGE _____     DOCKET NUMBER _____

DATE
1-7-08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| AAMCO Transmissions, Inc. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Todd Cox | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x)

| | | |
|---|---|---|
| 1-7-08 | William B. Jameson | AAMCO Transmissions, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-668-2900 | 610-664-5897 | wjameson@cottman... |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

### UNITED STATES DISTRICT COURT

**APPENDIX F**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 201 Gibraltar Road, Suite 150, Horsham, PA  19044

Address of Defendant: 9018 Perrin-Beitel Road, San Antonio, TX  78217

Place of Accident, Incident or Transaction:_____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))___          Yes☒  No☐

Does this case involve multidistrict litigation possibilities?          Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify)  Trademark Infringement - Lanham Act

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify)  contract

### ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, William B. Jameson , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 1-7-08          William B. Jameson          58949
                      Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1-7-08          William B. Jameson          58949
                      Attorney-at-Law              Attorney I.D.#

CIV. 609 (4/03)

**APPENDIX G**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

AAMCO Transmissions, Inc.            :
                                     :
                V.                   :                    Civil Action
                                     :                    No: _____
Todd Cox                             :

### DISCLOSURE STATEMENT FORM

Please check one box:

☐           The nongovernmental corporate party, _____, in the
            above listed civil action does not have any parent corporation and publicly held
            corporation that owns 10% or more of its stock.

☒           The nongovernmental corporate party, AAMCO Transmissions, Inc. , in the
            above listed civil action has the following parent corporation(s) and publicly held
            corporation(s) that owns 10% or more of its stock:

            American Driveline Systems, Inc. _____

            _____

            _____

            _____

____1-7-08____                      _____
      Date                          Signature   William B. Jameson

                    Counsel for:    AAMCO Transmissions, Inc. _____


**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
        (a) WHO MUST FILE: NONGOVERNMENTAL CORPORATE PARTY.  A nongovernmental
corporate party to an action or proceeding in a district court must file two copies of a statement
that identifies any parent corporation and any publicly held corporation that owns 10% or more
of its stock or states that there is no such corporation.
        (b) TIME FOR FILING; SUPPLEMENTAL FILING.  A party must:
            (1)    file the Rule 7.1(a) statement with its first appearance, pleading, petition,
                   motion, response, or other request addressed to the court, and
            (2)    promptly file a supplemental statement upon any change in the
                   information that the statement requires.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AAMCO TRANSMISSIONS, INC.      :          CIVIL ACTION
201 Gibraltar Road                    :
Horsham, PA  19044               :
         Plaintiff            :
      v.                     :          No.
TODD COX                     :
9018 Perrin-Beitel Road        :
San Antonio, TX 78217       :
         Defendant        :

### COMPLAINT

1.      Plaintiff, AAMCO Transmissions, Inc. ("ATI"), is a Pennsylvania corporation,

with its principal place of business located at 201 Gibraltar Road, Horsham, Pennsylvania

19044.

2.      Defendant, Todd Cox ("Cox"), is an adult individual who is a citizen of the State

of Texas with a principal place of business at 9018 Perrin-Beitel Road, San Antonio, TX  78217.

3.      This Court has jurisdiction pursuant to 15 U.S.C.A. §1121(a).  This Court also has

diversity jurisdiction pursuant to 28 U.S.C.A. §1332 based upon the diverse citizenship of the

parties and the amount in controversy which exceeds $75,000 exclusive of interest and costs.

4.      Venue lies in this District pursuant to 28 U.S.C.A. §1391, in that ATI resides in

this District, Cox has transacted business with ATI continuously over the last several years in this

District and the claims arise under a contract that was made in this District.

### BACKGROUND

5.      Since at least 1963, ATI has continually used the name "AAMCO" as its trade

name, trademark and service mark in connection with the operation of transmission repair

centers. It is the owner of the following marks registered on the principal register of the United States Patent and Trademark office for "automobile repair services":

| Registration # | Date of Registration | Description |
|---|---|---|
| 851,209 | June 18, 1988 (renewal) | The name "AAMCO". |
| 860,330 | November 12, 1988 (renewal) | Pictorial representation containing the name "AAMCO". |
| 1,127,710 | December 11, 1999 (renewal) | Pictorial representation containing the name "AAMCO Transmissions". |

6.      ATI is engaged in interstate commerce in, *inter alia*, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission repair centers throughout the United States and Canada. There are presently over 700 independent dealers licensed or franchised by ATI to operate transmission repair centers under the "AAMCO" trade name and trademark.

7.      The "AAMCO" trade name and trademark have become universally associated with the repair of motor vehicle transmissions and the operation of transmission repair centers. As a result, ATI owns common-law trade name and trademark rights in the name "AAMCO" and in the marks described above. By virtue of the long use and promotion and the resulting fine public reputation of the trade name "AAMCO", there exists a secondary meaning in the name "AAMCO" and the above marks.

8.      Large sums of money have been spent in advertising and promoting the services sold under ATI's trade name and trademarks, and today ATI has a substantial business and a long

established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks.

9.      ATI has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential to the maintenance of ATI's quality transmission repair centers and the goodwill and reputation associated therewith.  To supervise and control the use of its trade name and trademarks, ATI has established standards and policies governing the use of advertising featuring ATI's trade name and trademarks.

10.      On August 25, 2005, ATI and Cox entered into a franchise agreement, pursuant to which Cox was conditionally authorized to use and has been using the name and mark "AAMCO" in connection with the operation of an automotive transmission repair center presently located at 9018 Perrin-Beitel Road, San Antonio, TX  78217 ("Perrin-Beitel Road Center").  A true and correct copy of this franchise agreement (the "Perrin-Beitel Road Franchise Agreement") is attached hereto, marked as Exhibit A and incorporated herein by reference.

11.      Thereafter, on January 29, 2007, Cox entered into another franchise agreement with ATI, pursuant to which Cox was conditionally authorized to use and has been using the name and mark "AAMCO" in connection with the operation of an automotive transmission repair center presently located at 10502 IH 35N, San Antonio, TX 78233 ("IH 35N Center").  A true and correct copy of this franchise agreement (the "IH 35N Franchise Agreement") is attached hereto, marked as Exhibit B and incorporated herein by reference.

12.      Under the AAMCO system, franchisees within local advertising markets are required to work together and participate in local ad pools where they jointly fund approved AAMCO advertising which is then placed by the pool for the benefit of the entire local market.

For example, *see* Section 7.2 of the Perrin-Beitel Road Franchise Agreement (Exhibit A), and Section 11.2 of the IH 35N Franchise Agreement (Exhibit B).

13.    In order to control the proper use of its marks and protect the integrity of its local ad pool system for advertising, ATI requires that all advertising be pre-approved in writing by ATI and that each franchisee specifically agree to participate in the national Yellow Pages program of ATI and agree not to place Yellow Pages advertising in any other manner. *Id.*

14.    In November of 2007, the new AT&T Yellow Pages publication for the San Antonio market went into publication and distribution.

15.    The new Yellow Pages publication contains the San Antonio ad pool's ATI approved ad placed in accordance with ATI's national Yellow Pages program (the "Authorized Ad"). The Authorized Ad lists the telephone number and location of AAMCO Transmission Centers in the San Antonio market.

16.    The new Yellow Pages publication, however, also contains another ad featuring ATI's marks. This ad was placed by Defendant Cox without ATI's knowledge or authorization (the "Unauthorized Ad"), and not only does it list the address and telephone number for Defendant Cox's Perrin-Beitel Road Center and IH 35N Center, it also lists four (4) other phantom AAMCO locations (i.e., "Southside", "Northside", "Southeast" and "Downtown"), each with its own designated telephone number controlled by the Defendant. A true and correct copy of Defendant's Unauthorized Ad is attached hereto and made a part hereof at Exhibit C.

17.    The Unauthorized Ad appears on a page prior to the Authorized Ad, which ad lists the AAMCO Transmission Centers of other ATI franchisees in the San Antonio market who draw their customers from the south, north, southeast and downtown areas of San Antonio.

18.    By letter dated October 25, 2007, ATI notified Cox that his Unauthorized Ad was placed in violation of his Franchise Agreements because it was not pre-approved in writing by ATI. The letter also notified Cox that the Unauthorized Ad was improper because, through the use of intentionally misleading information, it is designed to redirect AAMCO customers to Cox's Centers at the expense of other AAMCO Transmission Centers in the San Antonio market who may be closer and more convenient to the customers. A true and correct copy of the said letter is attached hereto and made a part hereof at Exhibit D.

19.    ATI, in its letter of October 25, 2007, offered Defendant a means to cure his defaults under the Franchise Agreements by transferring the telephone numbers for the phantom locations to ATI, who could then place the telephone numbers into its locator answering service, which identifies for the caller the three (3) AAMCO Transmission Centers physically nearest the caller's location and permits the caller to select which AAMCO Transmission Center he/she wishes to contact.

20.    In response, Defendant Cox initially agreed to transfer the telephone lines at issue to AAMCO's locator answering service, but later, without informing ATI, transferred them back.

21.    As of the date this Complaint was filed, ATI does not have control of the telephone numbers for the phantom locations listed in Defendant's Unauthorized Ad and business continues to be misdirected to Defendant's Centers and away from other authorized AAMCO franchisees in the San Antonio market.

### COUNT I - TRADEMARK INFRINGEMENT

22.    ATI hereby incorporates by reference, as if fully set forth, paragraphs 1 through 21 above.

23.     Cox has willfully and without justification failed and refused to comply with both his Perrin-Beitel Road Franchise Agreement and his IH 35N Franchise Agreement.

24.     Pursuant to Section 7.2 of the Perrin-Beitel Road Franchise Agreement, and Section 11.2 of IH 35N Franchise Agreement, Cox agreed that all advertising for his Centers would be pre-approved in writing by ATI, and that Cox would participate in the national Yellow Pages program of ATI and not place Yellow Pages advertising in any other manner.

25.     Cox has materially breached the terms and conditions of the Franchise Agreements by failing to comply with Section 7.2 of the Perrin-Beitel Road Franchise Agreement, and Section 11.2 of the IH 35N Franchise Agreement.

26.     As a result of Defendant's wrongful conduct, AAMCO customers who consult their local Yellow Pages are being misled and/or confused about the location and proximity of AAMCO Transmission Centers in the San Antonio area.

27.     Cox's continued failure and refusal to comply with those obligations has caused and continues to cause ATI irreparable harm to its reputation and goodwill.

28.     Unless Cox is enjoined, AAMCO customers who consult their local Yellow Pages will continue to be misled and/or confused about the location and proximity of AAMCO Transmission Centers in the San Antonio area.

29.     Should the Court grant ATI's request to enjoin Defendant Cox to transfer the telephone numbers for the phantom locations to ATI, ATI will be able to mitigate the irreparable harm it is suffering by placing the phantom location telephone numbers into its locator answering service, which service automatically routes calls to the AAMCO Transmission Center physically nearest the caller.

30.    The actions and conduct of Cox as set forth in this Complaint constitute willful trademark infringement in violation of 15 U.S.C.A. §1114.

31.    Further, Defendant's actions as set forth in this Complaint constitute a violation of 15 U.S.C.A. 1125.

32.    The damages that have been occasioned by the willful trademark infringement that has been engaged in by Cox are irreparable and continuing, and ATI has no adequate remedy at law.

33.    Pursuant to 15 U.S.C.A. §1116, ATI is entitled to injunctive relief to protect its rights under the Lanham Act.

34.    Pursuant to 15 U.S.C.A. §1117(a), ATI is entitled to an accounting of the profits Defendant procured as a result of the Unauthorized Ad and that these profits be awarded to ATI, along with all other damages for Cox's violation of ATI's trademark rights, trebled in accordance with 15 U.S.C.A. §1117(a).

### COUNT II - BREACH OF FRANCHISE AGREEMENTS

35.    ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 34 above.

36.    The Franchise Agreements require that Defendant not place unauthorized Yellow Pages advertising.

37.    Defendant has breached and remains in breach of Section 7.2 of the Perrin-Beitel Road Franchise Agreement, and Section 11.2(a) of the IH 35N Franchise Agreement.

38.    By using ATI's mark in an unauthorized manner in breach of the Franchise Agreements, Defendant is purposely misleading and confusing customers who consult their local

Yellow Pages in the San Antonio market about the geographic origin of the services Defendant is providing under the AAMCO tradename.

39.     A customer who calls one of the phantom locations listed in the Defendant's Unauthorized Ad, will ring into one of Defendant's Centers (or wherever Defendant chooses) but not necessarily to the AAMCO Transmission Center most convenient to the customer.

40.     By placing the Unauthorized Ad featuring ATI's marks without ATI's authorization in breach of the License Agreements, the Defendant has purposefully acted to deprive ATI from its right to control its own marks.

41.     Defendant's continuing breach of the Franchise Agreements has caused and continues to cause irreparable harm to Plaintiff in the form of loss of reputation, sales and goodwill to ATI's AAMCO mark.

42.     ATI has no adequate remedy at law for damages, and unless injunctive relief is granted enjoining Defendant from using Plaintiff's trademarks in an unauthorized manner and ordering Defendant to transfer the telephone numbers listed in the Unauthorized Ad, ATI will continue to suffer irreparable harm.

43.     ATI is entitled to monetary damages for the harm it has and will incur.  Further, ATI is entitled to injunctive relief to protect its rights going forward.

COUNT III – UNFAIR COMPETITION

44.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 43 above.

45.     Cox's conduct constitutes unfair competition in that he is:

(a) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services in connection with his conduct of business;

(b) Causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by ATI of his conduct of business; and,

(c) Representing to the public that he is selling goods and providing services in a manner authorized by ATI, which he is not.

46.     These acts by Cox have been committed willfully and with full knowledge of the refusal of ATI to authorize the deceptive advertising Defendant is using under the AAMCO tradename; and with the intention of deceiving and misleading the public.

47.     Cox's unlawful trade practices will irreparably harm and injure ATI's trademarks, trade name, reputation and goodwill.

48.     ATI is without an adequate remedy at law.

49.     ATI is entitled to monetary damages for the harm it has and will incur.  Further, ATI is entitled to injunctive relief to protect its rights going forward.

COUNT IV – UNJUST ENRICHMENT

50.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 49 above.

51.     Defendant has unjustly benefited from his unauthorized use of ATI's trademark.

52.     Specifically, by virtue of Defendant's wrongful placement of the Unauthorized Ad featuring the AAMCO tradename, which ad misdirects customers to his AAMCO Transmission Centers at the expense of other more conveniently situated AAMCO Transmission Centers, Defendant has been unjustly and wrongly enriched.

53.     Accordingly, justice requires that Defendant be required to disgorge the profits he has wrongfully appropriated through his placement of the Unauthorized Ad.

COUNT V – COSTS AND ATTORNEYS' FEES

54.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 53 above.

55.     Pursuant to Section 21.5 of the Perrin-Beitel Road Franchise Agreement and Section 17(a) of the IH 35N Franchise Agreement, Defendant agreed to pay all costs incurred by Plaintiff in bringing this action, including attorneys' fees. *See* Exhibits A and B, respectively.

56.     Pursuant to 15 U.S.C.A. §1117, ATI is entitled to recover the costs of this action and attorneys' fees.

57.     Upon the filing of this Complaint, Plaintiff ATI has incurred a filing fee of Three hundred fifty dollars ($350.00) in this matter.

58.     Plaintiff ATI has incurred and continues to incur attorneys fees in the pursuit of this action.

RELIEF SOUGHT

WHEREFORE, ATI requests the following relief:

A.     That Cox, his officers, agents, servants, employees and those persons in active concert or participation with him, be preliminarily and permanently enjoined from using ATI's trademarks in an unauthorized manner and are ordered to transfer to ATI the telephone numbers listed in the Unauthorized Ad (i.e., 210-247-0679, 210-253-2478, 210-253-2452, 210-852-2657, 210-248-0046 and 210-775-1759) and take such steps as may be necessary or appropriate to transfer each such telephone number and if Defendant shall fail to do so, that counsel for ATI be

designated by the Court as his attorney-in-fact to execute such documents in his name and in his place.

B.      That Cox be ordered to file with the Court and to serve on ATI within thirty (30) days after the issuance of any preliminary and/or permanent injunction herein, a report in writing, under oath, setting forth in detail the measures undertaken by Cox to comply herewith.

C.      That Cox be ordered to provide an accounting pursuant to 15 U.S.C.A. §1117(a), of the profits procured at his Centers arising from his use of the Unauthorized Ad and that these profits be awarded to ATI, along with all other damages for Cox's violation of ATI's trademark rights, trebled in accordance with 15 U.S.C.A. §1117(a).

D.      That ATI be awarded its reasonable attorneys' fees, costs of court and all other and further relief to which it may be entitled.

William B. Jameson
Attorney ID. # 58949 (Pennsylvania)
Attorney for Plaintiff
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900

# EXHIBIT A

# AAMCO TRANSMISSIONS, INC.

## Franchise Agreement

This Agreement has been entered into this 25th day of August 2005 at Bala Cynwyd, Pennsylvania between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bala Cynwyd, Pennsylvania, referred to as "AAMCO", and

Todd A. Cox           referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1    **Franchise.** This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a)  Franchisee must successfully complete AAMCO's training course.

(b)  Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(c)  Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2    **Location.** The center shall be located as follows:

9018 Perrin-Beitel Road
San Antonio, TX 78217

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3    **Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1    **Trademark.** Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to register the word "AAMCO" as part of the company name of his business entity, corporation, partnership or limited liability company.

3.1    **Franchise Fee.** ~~Starting with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of five (5)% of the gross receipts of the preceding week.~~ "Gross receipts" shall mean all forms of consideration received for any services or parts in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

**SEE AMENDMENT**



**PLEASE INITIAL**

4.1    **Business Reports.** Starting with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with copies of the repair orders for all work completed during the preceding week and such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 3.1, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

AT-04-6(1) Resale - 5%                             1

**5.1   General Policies.**  Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions.  Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable.  Franchisee agrees to direct any of his employees, including any customer service manager employed in his AAMCO center, to attend meetings and to meet training requirements as AAMCO may determine.

**5.2   Performance Standards.**  Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals, as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee.  Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs.  Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate.  Franchisee agrees to operate his center in such manner so as to avoid customer complaints.  Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center.  Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center.  Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe.  Franchisee further agrees to attend such meetings and training sessions as AAMCO may require, and to direct any of his employees to attend such meetings and training sessions, including directing the center's technicians to obtain technical certification, as AAMCO may require, pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications.

In his operation of his center, Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO diagnostic forms, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to offer to customers of his center all services, products and/or warranties which AAMCO may prescribe.  Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

**5.3   Appearance Standards.**  Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair.  Franchisee agrees to maintain the interior and exterior painting and décor, and furnishings of his center in such a manner and form as may be required by AAMCO.  Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

**5.4   Maintenance Standards.**  Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

**5.5   Non-Disclosure.**  Franchisee agrees that he will not furnish any information concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

**6.1   Obligations of AAMCO.**  AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order subject to AAMCO's standard credit approval; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1    **National Creative Advertising.**    Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

7.2    **Local Advertising.**    Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level. Franchisee specifically agrees to establish and adhere to a local advertising budget, subject to AAMCO's approval.

Franchisee further agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time. If Franchisee's AAMCO center is not part of a DMA or is the only AAMCO center in a DMA, Franchisee agrees to share local advertising with other franchisees in related or adjoining DMAs if coverage from local advertising in the related or adjoining DMAs permeates within Franchisee's market or if directed by AAMCO.

Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

If Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool seek enforcement of this obligation.

7.3    **National Advertising.**    Franchisee agrees to participate in advertising programs at the national level if established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

8.1    **Signs.**    Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

9.1    **Standards and Specifications for Equipment and Inventory.**    AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

9.2    **Equipment, Supplies and Inventory.**    If Franchisee requests to purchase equipment, supplies and inventory from or through AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quantity, and adjust the price, after notice to Franchisee.

AT-04-6(1) Resale                                                              3

9.3   **Operating Inventory**.  Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO centers, and agrees that the use exclusively of parts and assembly sets which comply with AAMCO's specifications is an essential condition of the performance of this Agreement.  Franchisee agrees to purchase and sell parts and assembly sets which comply with AAMCO's specifications.  At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications.  Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination.  AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center.  Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications.  Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training.  AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

9.4   **Product Warranties**.  There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

10.1   **Warranty Program**.  Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center.  Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2   **Warranty Payment Rates**.  Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required.  The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) business days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee.  If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

10.3   **Prohibition Against Other Warranties**.  Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO either to any customer or to Franchisee.  There are no warranties expressed or implied made by AAMCO to the customer in connection with any product or service furnished by AAMCO under this Agreement.

11.1   **Accounting Forms**.  Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request.  Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.  Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO.  Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.  Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such recordkeeping systems as AAMCO may request.  Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.  Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO as part of standard auditing procedures.  Franchisee further agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.

11.2   **Inspection of Records**.  AAMCO's representative may enter Franchisee's center to inspect books and records to verify the accuracy of Franchisee's reports.  Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3   **Damages**.  If at any time Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then Franchisee shall pay AAMCO immediately any deficiency in franchise fees together with interest pursuant to section 14.1, calculated from when such fees should have been paid.  In addition, Franchisee agrees to pay AAMCO for any and all expenses connected with AAMCO's examination of Franchisee's reporting practices, including but not limited to reasonable administrative, accounting and attorneys' fees and the costs incurred in connection with the investigation of Franchisee's recordkeeping and obtaining inspection of his records.

Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to the franchise fees due plus interest calculated pursuant to section 14.1.  These liquidated damages shall be in addition to any other remedies AAMCO may have.

11.4   **Financial Statements**.  Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year.  In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period.  All statements required by this paragraph need be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles.  All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

AT-04-6(1) Resale                                    4

**12.1   Insurance.**   Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured.   Franchisee acknowledges that AAMCO reserves the right to increase the amounts of insurance coverage required by this section and agrees to comply with any such increased amounts after notice from AAMCO; AAMCO agrees to act reasonably in determining such increased amount.   In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined. Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.   Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.   Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

**12.2   Indemnity Agreement.**   Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.   This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or wilful conduct by Franchisee or by any of his employees, servants or agents.   The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

**12.3   Independent Contractor.**   Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever.   Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever. Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.   Franchisee specifically agrees that he shall not do so.

**13.1   Security Deposit.**   Franchisee acknowledges that he has deposited with AAMCO the sum of $5,000 as security for compliance with all the provisions of this Agreement.   This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.   AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.   It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.   AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.   Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $5,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $5,000.

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

**14.1   Defaults in Payment.**   Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued.   Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissible rate, whichever is less, from thirty (30) days after the due date until payment.   The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts.   Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fees.   In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor.   Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.1.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

15.1 **Assignment.** This Agreement is a personal obligation of Franchisee and his rights to the use of AAMCO's service marks and trademarks are not assignable nor transferable under any circumstances except in strict compliance with the provisions herein.

(a) In the event of Franchisee's death, his rights shall pass to his heirs or next of kin on the condition that such heirs or next of kin must immediately attend and successfully complete AAMCO's training course as provided for in this Agreement. Such person or persons must attend the AAMCO Operator's Training Course by the third class offered after the date of the death of Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b) If Franchisee, as an individual, desires to form a corporation, partnership or a limited liability company for the operation of the AAMCO center and to have rights under this Agreement, he may do so only upon the following terms and conditions:

(1) Franchisee's name remains on the Agreement and the entity is added as a co-franchisee on the Agreement.

(2) The entity is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3) Franchisee is the owner of the majority of the stock, partnership interests or membership units of the entity, is the principal executive officer of the entity and has full and complete authority to act for the entity. In the event of the death of Franchisee who is the majority shareholder, partner or member of such entity, then the provisions of section 15.1(a) above will apply, except that such heir or next of kin must hold a majority interest in the entity, be a principal executive officer of the entity and must have full and complete authority to act for the entity.

(4) All money obligations of Franchisee under this Agreement must be satisfied.

(5) The entity must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement. It is expressly understood that the assumption of Franchisee's obligation by any entity does not limit Franchisee's personal obligations under this Agreement and Franchisee and the entity shall be jointly and severally liable.

(6) The entity shall disclose in writing the names and addresses of all of its officers and directors, partners or members and, whenever there is a change in any such officer, director, partner or member, shall immediately notify AAMCO of such change. Franchisee acknowledges that AAMCO has the right to approve the officers, directors, partners and members, which approval shall not be unreasonably withheld, and agrees that any such individual not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the entity or the AAMCO center.

(c) If Franchisee organizes or has organized a corporation, partnership or limited liability company in connection with the operation of the center, the capital stock, partnership interests or membership units shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of the capital stock, partnership interests or membership units of the entity subject to the same conditions listed in subparagraph (b) above to a purchaser, as though the person acquiring were a purchaser under section 15.2 of this Agreement. All ownership certificates shall have endorsed upon them the following:

> The transfer of this stock (or membership unit) is subject to the terms and conditions of a Franchise Agreement dated August 25, 2005, between AAMCO Transmissions, Inc. and Todd A. Cox

(d) Franchisee agrees that this Agreement may not be transferred by a corporation, partnership or limited liability company by transfer of stock, partnership interests, membership units or by any other means.

15.2 **Sale.** If Franchisee desires to sell his AAMCO center, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below. AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied. The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers. Franchisee and other person or persons having control of the affairs of a corporate or other similar business entity franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale. Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a) If Franchisee sells his AAMCO center without the aid or assistance of AAMCO then the purchaser must sign a current form of franchise agreement. The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

6

(b)   If Franchisee has listed his center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department within the past 12 months, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3   **Attempted Sale, Assignment or Transfer**.   If Franchisee attempts to sell, assign or transfer his AAMCO center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void.   In the event that such attempted assignment or transfer is to a corporation wholly or partially owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the corporation that the attempted assignment or transfer shall subject the corporation to all the terms and conditions of this Agreement.   Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO center.

15.4   **Notification of Resale**.   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1   **Duration of the Franchise**.   This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years.   Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years.   Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a)   Any default set forth in section 18.1 of this Agreement notwithstanding compliance with paragraph 18.1(b); or

(b)   Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.   AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1   **No Waiver by AAMCO**.   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

18.1   **Termination**

(a)   AAMCO may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1)   A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)   If Franchisee unreasonably delays in opening his center.   In no event shall a period of less than eight (8) months be considered an unreasonable delay.   In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3)   If Franchisee terminates or attempts to terminate this Agreement for any reason.   If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)   In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)   Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)   Failure to make any payments required under any provision of this Agreement.

(7)   If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)   If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)   If Franchisee shall commit a violation of any provision of this Agreement.

(b)  Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement.  For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default.  Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement.  It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c)  Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

### 19.1   Procedures after Termination.

(a)  Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1)  Promptly pay AAMCO all sums due and owing.

(2)  Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center.  If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3)  Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4)  Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5)  Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7)  At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b)  Upon termination of Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein.  If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement.  The full purchase price of the center shall be:

(1)  In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2)  In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center.  AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds.  If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine.  In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c)  If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal.  In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d)  If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so.  In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company and/or yellow or white page directory publisher as a result of their implementing the transfer, amendment or termination set forth herein.

(e)   The termination of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

19.2   **Covenant Not-To-Compete.**   Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a)   During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b)   For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c)   Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d)   Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1   **Applicable Laws.**   Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2   **Federal Trade Commission Orders.**   Franchisee acknowledges receipt of a copy of FTC Order No. 8816 and Franchisee agrees to adhere to the provisions of this Order in his dealings with the public and with AAMCO.

21.1   **Jurisdiction.**   This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania, shall be interpreted according to the laws of Pennsylvania and Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance.

Franchisee hereby agrees that mailing to his last known address by certified or registered mail or by any overnight carrier service which provides a receipt of any process shall constitute lawful and valid process. Franchisee agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania or to the Court of Common Pleas of Philadelphia or Montgomery County, Pennsylvania in any action, proceeding or counterclaim, whether at law or at equity, in any manner whatsoever which arises out of or is connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

21.2   **Jury Trial Waived.**   Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

21.3   **Severability.**   In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

21.4   **Notice.**   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail to the other party at the addresses set forth below, unless notice is given of a change of address. However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

21.5   **Recovery of Costs and Attorneys' Fees.**   In any court or arbitration proceeding brought by either party hereto arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

22.1   **Mediation and Arbitration.**

(a)   Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b)   All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

AT-04-6(1) Resale                                                                                                    9

23.1  **Entire Agreement**. This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties. Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                                            AAMCO TRANSMISSIONS, INC.

_____     By: _____

_____     _____
WITNESS                                            FRANCHISEE – Todd A. Cox                    (SEAL)

_____     _____
WITNESS                                            FRANCHISEE                                      (SEAL)

_____     _____
WITNESS                                            FRANCHISEE                                      (SEAL)

_____     _____
WITNESS                                            FRANCHISEE                                      (SEAL)


Address for AAMCO Transmissions, Inc.          Address for Franchisee:
One Presidential Boulevard
Bala Cynwyd, PA  19004


AT-04-6(1) Resale                              10

## AMENDMENT TO FRANCHISE AGREEMENT

This Amendment, made as of this 25th day of August, 2005, by and between AAMCO TRANSMISSIONS, INC. (AAMCO) and Todd A. Cox (Franchisee).

WHEREAS, the parties have entered into a written Franchise Agreement as of this date under which Franchisee is granted the right to operate an AAMCO transmission repair shop at 9018 Perrin-Beitel Road, San Antonio, TX 78217; and

WHEREAS, the parties desire to amend the Franchise Agreement.

NOW, THEREFORE, for and in consideration of the mutual agreements contained herein, and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    Paragraph 3.1 Franchise Fee is amended by deleting the first sentence and adding the following:

Beginning with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of five percent (5%) of the gross receipts of the preceding week, until August 7, 2006.  From August 8, 2006 to August 24, 2020 the franchise fee shall be a sum equal to seven percent (7%) of gross receipts.

2.    All other terms and conditions of the Franchise Agreement as amended remain in full force and effect.

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have set their hands and seals as of the date first above written.

AAMCO TRANSMISSIONS, INC.

ATTEST:

By: _____

_____

_____                    _____
Witness                                             Franchisee – Todd A. Cox

# EXHIBIT B



EDAC 06-01-(11)

## TABLE OF CONTENTS

|  | Background | 1 |
| Section 1. | Grant of Franchise | 1 |
| Section 2. | Initial License Fee and Deposit | 2 |
| Section 3. | Term | 2 |
| Section 4. | Location and Lease | 2 |
| Section 5. | Training, Security Deposit and Commencement of Business | 3 |
| Section 6. | Services Rendered by AAMCO | 4 |
| Section 7. | Operator's Manual | 5 |
| Section 8. | Certain Obligations of Franchisee | 5 |
| Section 9. | Equipment, Inventory, Supplies and Signs | 7 |
| Section 10. | Franchise Fees and Business Reports | 7 |
| Section 11. | Advertising | 8 |
| Section 12. | Insurance, Indemnity Agreement and Independent Contractor | 9 |
| Section 13. | AAMCO Names, Marks and Trade Secrets; Protection of the System | 10 |
| Section 14. | Warranty Program | 11 |
| Section 15. | Telephone Service | 11 |
| Section 16. | National Fleet Accounts Program | 11 |
| Section 17. | Defaults in Payment and Expenses | 11 |
| Section 18. | Restrictions on Change of Ownership | 12 |
| Section 19. | Termination and Procedures after Termination | 14 |
| Section 20. | Covenant Not-to-Compete | 16 |
| Section 21. | No Waiver | 17 |
| Section 22. | Successors | 17 |
| Section 23. | Notice | 17 |
| Section 24. | Risk of Operations | 17 |
| Section 25. | Severability | 17 |
| Section 26. | Jurisdiction, Venue and Controlling Law | 18 |
| Section 27. | JURY WAIVER | 18 |
| Section 28. | Mediation and Arbitration | 18 |
| Section 29. | Entire Agreement | 18 |

EDAC 06-09-(1)

## *AAMCO Transmissions, Inc.*



## Franchise Agreement

This Agreement is entered into as of <u>January 29, 2007</u>, by and between AAMCO Transmissions, Inc., 201 Gibraltar Road, Horsham, Pennsylvania 19044 ("AAMCO"), and Todd A. Cox ("Franchisee").

As a result of extensive experience in the transmission and general automotive repair business, AAMCO has developed methods, procedures and techniques for the operation of AAMCO centers devoted to such repair business and AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and Canada and

AAMCO has developed a system (the "System") for conducting operations in the transmission and general automotive repair business which consists, in part, of the use of the "AAMCO" trade name and trademarks, AAMCO's methods, procedures and techniques, and a network of Centers devoted exclusively to the transmission and general automotive repair business ("Centers") which use the "AAMCO" name and the methods, procedures and techniques; and

AAMCO has created a substantial demand for its products and services by maintaining high standards of quality in its operation and in the operation of its franchised Centers and by extensive advertising; and

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandizing of Franchisee's center.

In recognition of the value of participating in the System, Franchisee desires to acquire a franchise to operate a Center;

The parties, intending to be legally bound, enter into this Agreement in recognition of these considerations and of the mutual promises and agreements contained herein.

1.     **Grant of Franchise.**

    **1.1**     In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, Franchisee shall have the right, subject to compliance with the terms and conditions of this Agreement, to operate a Center ("the Center"), under the "AAMCO" name and under any other trade names, trademarks, service marks and logos ("AAMCO names and marks") presently used, or which may hereafter be used in the System.

**1.2** Franchisee's Center shall be located as follows: <u>San Antonio</u>
Metropolitan Statistical Area/Micropolitan Statistical Area (collectively "Statistical Area")

Address: 10502 IH 35N
San Antonio, TX 78233

Franchisee agrees to operate his Center at no other address. Franchisee agrees not to move or relocate his Center without the express prior written approval of AAMCO, which approval shall not be unreasonably withheld.

(a) AAMCO expressly reserves the right to grant additional franchises or establish other Centers in the same Statistical Area. The number of Centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO, and shall be limited to a maximum of one Center for each 100,000 motor vehicle registrations. Franchisee agrees that he does not have and is not being granted a protected trading area, specifically without limitation, in regard to the placement of other AAMCO Centers.

**2.    License Fee.**

(a) Franchisee agrees to pay the sum of $15,000 as a license fee. This license fee does not permit Franchisee to use the AAMCO names and marks or to operate the Center without compliance with other provisions of this Agreement.

(b) Franchisee acknowledges that AAMCO shall incur expenses upon execution of this Agreement. In the event of any termination, cancellation or rescission of this Agreement for any reason whatsoever, AAMCO will suffer damages not able to be determined; therefore, AAMCO, in addition to any other rights or remedies it may have, shall be entitled to retain the license fee as liquidated damages.

**3.    Term.**

This Agreement shall begin as of the date set forth above and shall continue for a term of fifteen (15) years. Unless either party gives written notice of its intention not to renew at least 180 days prior to the expiration of the fifteen-year term, Franchisee shall have the right to renew this franchise at the end of the term provided he is not then in default under the Agreement. In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO, at least ninety (90) days, but not more than one (1) year, prior to the expiration of the term. If, at least ninety (90) days prior to the expiration of the term of this franchise, Franchisee has not executed AAMCO's then current franchise agreement, this Agreement shall automatically terminate at the end of the term without further action by any party and Franchisee shall comply in full with section 19.2, Procedures after Termination. AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy. Notwithstanding anything in this section 3 to the contrary, any renewal of the franchise shall be subject to the other provisions of this Agreement regarding termination.

**4.    Location and Lease.**

(a) Upon the execution of this Agreement, Franchisee agrees to proceed with due diligence to secure a location for the Center within the Statistical Area stated in section 1.2 of this Agreement, in accordance with the guidelines set forth in AAMCO's Center Opening Procedures Manual. In the event Franchisee fails to open his Center for business within one year from the date of execution of this Agreement, AAMCO may, absent any extension of time agreed to in writing by AAMCO, immediately and without prior notice, cancel and terminate this Agreement.

(b) Franchisee agrees not to execute any documents of purchase or lease for any such location without the prior written approval of AAMCO as to location, and terms of sale or lease, whichever is applicable.

(c) If Franchisee purchases the Center location at any time during the term of this Agreement, or is the owner of the Center location prior to the execution of this Agreement, Franchisee hereby grants to AAMCO the option to lease the location on substantially the same terms and conditions contained in any lease under which Franchisee occupied the location as lessee, or if no such lease existed, then on terms and conditions that are commercially reasonable. This option granted may be exercised by AAMCO for a period of thirty (30) days following the termination, rejection or rescission of this Agreement for any reason whatsoever.

(d)  If Franchisee purchases the Center location at any time during the term of this Agreement, or is the owner of the Center location prior to the execution of this Agreement, Franchisee hereby grants to AAMCO, upon expiration or non-renewal, a right of first refusal to purchase or lease the Center location on terms and conditions that are commercially reasonable or on substantially the same financial terms and conditions of any binding third-party offer.  This right of first refusal may be exercised by AAMCO for a period of thirty (30) days following such expiration or non-renewal; provided, however, this right of first refusal shall not apply if Franchisee himself is using the location so long as such use is in compliance with section 20(b) of this Agreement.

(e)  If Franchisee is leasing the location, then, after AAMCO's written approval of the proposed location and lease, Franchisee shall execute the lease and agrees to deliver a copy of the fully executed lease to AAMCO.  Franchisee agrees that the lease shall contain a conditional assignment clause which shall provide that, upon the termination or expiration of this Agreement for any reason whatsoever, AAMCO or its designee shall have the option for thirty (30) days to assume the obligations of and to replace Franchisee as the lessee under the lease and at any time thereafter reassign the lease to a new franchisee.  Franchisee agrees not to terminate, renew or in any way alter or amend the lease during the Term or any renewal term of this franchise without AAMCO's prior written consent, and any attempted termination, renewal, alteration or amendment shall be null and void and have no effect as to AAMCO or AAMCO's interests.

(f)  Except as otherwise provided in this Agreement, Franchisee agrees not to assign its lease or sublet the Center, or any portion of the premises containing the Center.

(g)  If Franchisee chooses to design and construct his Center, Franchisee agrees to engage AAMCO's designated design and construction professional or, alternatively, to procure design and construction services from another source approved by AAMCO in writing.

(h)  Franchisee agrees not to make any material change to the Center premises or adjacent areas without the prior written consent of AAMCO.

**5.1     Training, Security Deposit and Commencement of Business.**

(a)  Prior to opening the Center for business, Franchisee must have attended and successfully completed to AAMCO's satisfaction, AAMCO's operator's training school, which includes instruction, training and education in the operation of the Center.  If Franchisee failed to complete training to AAMCO's satisfaction, AAMCO, in its sole discretion, may terminate this Agreement immediately, and this Agreement shall be of no further force and effect, and neither AAMCO nor Franchisee shall have any further liability or obligation to the other; provided, however, that the provisions of section 19 shall not be affected by any such termination.

(b)  Franchisee agrees to attend such additional training or meetings at such locations as AAMCO may, from time to time, direct.  All expenses incurred in connection with such attendance at training sessions or meetings shall be borne solely by Franchisee.

**5.2**     (a) Franchisee agrees to maintain at all times during the term of this Agreement a staff of trained employees sufficient to operate the Center in accordance with this Agreement.  Franchisee agrees that all personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe.  Franchisee agrees to direct any of his employees to attend such meetings and training sessions as AAMCO may require, including directing the Center's technicians to obtain technical certification, as AAMCO may require, pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications.  All expenses of travel, lodging, meals and any other expenses shall be borne and paid by Franchisee or the Center's employees.  Franchisee agrees not to employ any person who may be required by AAMCO to complete a training program or otherwise meet training requirements, but who fails to do so for any reason whatsoever.

(b)  Franchisee acknowledges and agrees that the training of the Center's technical employees is essential to the successful operation of his Center.  Franchisee, therefore, agrees to participate in, pay for and buy all materials for the AAMCO Tech Video/DVD Library Program, DirecTech® and any other technical training programs as and when directed by AAMCO according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications.  Franchisee further agrees that, at the request of AAMCO, he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training.  AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

(c)  Franchisee agrees that, regarding the hiring of employees for the Center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's Center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions.  Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable.

5.3   (a)  Franchisee acknowledges that he has deposited with AAMCO the sum of $5,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's Center, from this account for any costs or expenses that may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement. AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

(b)  Franchisee acknowledges that the creation and use of this account is a condition of the franchise, is intended to maintain a high level of customer satisfaction, and to minimize or resolve customer complaints. It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions; however, Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

(c)  Franchisee agrees that should the amount on deposit with AAMCO become less than $5,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $5,000.

(d)  AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section. AAMCO shall have no obligation to establish a separate bank account for such funds.

(e)  The deposit shall be reimbursed to Franchisee upon termination of this Agreement if the Center is sold by Franchisee in accordance with section 18.2 of this Agreement and the new franchisee assumes Franchisee's warranty obligations and pays a new security deposit with AAMCO.  In all other situations when this Agreement terminates, expires or is rescinded, AAMCO may use the deposit to cover the costs of warranty work arising from warranties issued by the Center prior to the termination, expiration or rescission of this Agreement; and AAMCO may retain the deposit for a period of three (3) years from the date of termination, at which time any remaining balance will be returned to Franchisee provided Franchisee has complied in full with sections 19 and 20 of this Agreement. All warranty repairs charged under this subsection shall be performed at and in accordance with AAMCO's then current Intershop Warranty rate and policies and procedures.

6.1   **Services Rendered by AAMCO.**  AAMCO agrees to:

(a)  assist Franchisee in obtaining a location and negotiating a lease;

(b)  assist Franchisee with the layout of the Center and the installation of equipment;

(c)  assist Franchisee in finding and evaluating personnel;

(d)  furnish to Franchisee the Operator's Manual described in section 7, parts catalogues, and instructional and training materials for the purpose of providing guidance in the methods, procedures and techniques of operating a Center;

(e)  furnish, from time to time, such business information, literature and materials as AAMCO determines may be helpful in improving the operations of the Center;

(f)  advise and consult with Franchisee during usual business hours on matters relating to the operation of the Center;

(g)  advise Franchisee of any new developments or improvements in the System;

(h)   assist Franchisee by providing Technical Consulting services for use by all franchisees. These s ervices will include T echnical H ot L ine D epartment, P ublication o f T echnical Advisory b ulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of these services will be the minimum ratio maintained for the provision of these services.

(i)   provide initial training and other additional training programs, sessions and meetings as AAMCO may determine;

(j)   assist in the design o f advertising promoting the business of AAMCO franchisees and t he services they sell; and make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and/or local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques; and

(k)   continue to protect the good will and reputation associated with the AAMCO name and marks and other distinguishing aspects of the System.

6.2   AAMCO agrees that, before AAMCO grants any additional franchise in the Statistical Area in which Franchisee's Center is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

**7.1   Operator's Manual.**

(a)   AAMCO shall lend to Franchisee a manual produced and published by AAMCO (the "Operator's Manual") w hich i ncludes, i n p art, the b usiness procedures, technical advice, policies and p rocedures, a nd rules and regulations for the operation of the Center.

(b)   Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

**7.2**   Franchisee acknowledges and agrees that:

(a)   the Operator's Manual is the property of AAMCO and shall remain its property during the term of this Agreement and any renewals;

(b)   the Operator's Manual contains confidential information which Franchisee will protect as a trade secret, and that its loss will cause substantial damage to AAMCO and the System although the amount of such loss would be incalculable with any degree of accuracy.   Consequently, in the event of loss of this Operator's Manual, Franchisee agrees to pay to AAMCO such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

(c)   Franchisee will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

(d)   upon termination of this Agreement for any reason, the Operator's Manual will be immediately returned to AAMCO.

**8.**   **Certain Obligations of Franchisee.**   In order to maintain the high quality and uniform standards associated with the System and to protect its good will and reputation, Franchisee agrees to:

(a)   deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his Center

(b)   operate his Center in such a manner so as to avoid customer complaints, since any customer complaint cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his Center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his Center or from any other AAMCO center.

(c)   honor and comply with the terms of all advertising placed by or at the direction of AAMCO or Franchisee;

(d) devote his/her best efforts to the day-to-day operations and development of the business of the Center;

(e) operate the Center exclusively as an automotive repair and servicing business and not engage in any other business at the Center, except as otherwise approved in writing by AAMCO;

(f) design, keep and maintain the Center and its appearance in an attractive, clean, safe and orderly manner consistent with the operation of a first class automotive business and any directives of AAMCO deemed by it to be necessary to protect the standards of quality and uniformity of the Centers and the System, including (1) interior and exterior painting and décor, (2) shop and sales office layout and character of interior furnishings, and (3) use and display of such signs, emblems, logos, lettering and pictorial materials as required or approved by AAMCO;

(g) operate the Center in accordance with the methods, policies and procedures, and techniques included in the Operator's Manual and other training manuals and materials, as modified and/or updated from time to time as determined by AAMCO in its sole discretion, or otherwise approved by AAMCO;

(h) conduct his Center in a manner so that it will not detract from nor bring into disrepute the AAMCO name and marks;

(i) comply at all times with all federal, state, provincial, county, city, municipal and other local laws, regulations and ordinances applicable to Franchisee's business;

(j) employ center personnel who conform to the experience or skill standards that AAMCO may prescribe;

(k) operate the Center under the name AAMCO and under no other name unless directed in writing by AAMCO, and use and display the AAMCO name and marks prominently in such manner as may from time to time be directed in writing by AAMCO and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

(l) permit AAMCO during business hours to inspect the premises of the Center, confer with Franchisee and Franchisee's employees and customers, check equipment and inventories, methods, books and records, and perform any other inspection deemed by AAMCO to be necessary to determine the nature, quality and uniformity of service rendered at the Center in order to protect the System and to determine Franchisee's performance under this Agreement. Franchisee specifically agrees that neither his physical presence in the Center nor his specific consent to any such inspection shall be necessary;

(m) submit to AAMCO uniform business and financial reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of Franchisee's federal income tax return relating to the operations of the Center within thirty (30) days after such return is filed. If AAMCO adopts as part of the System a format of reporting via electronic polling, Franchisee agrees to submit his uniform financial reports through the internet or other electronic means which is compatible with software used by AAMCO for such purpose;

(n) maintain a system of bookkeeping and recordkeeping as requested by AAMCO, keep his books and records at the Center at all times and make them available during business hours to authorized representatives of AAMCO for the purpose of verifying the accuracy of Franchisee's business and financial reports. If such verification reveals that the gross receipts reported by Franchisee to AAMCO are more than two percent (2%) less than Franchisee's actual gross receipts, Franchisee agrees to reimburse AAMCO for all expenses connected with such verification, including, but not limited to, reasonable administrative, accounting and legal fees, and without limitation to any other rights and remedies AAMCO in its sole discretion, may elect to pursue. Franchisee shall pay to AAMCO immediately any deficient and delinquent franchise fees, together with interest at the rate of eighteen percent (18%) per annum calculated from the date when franchise fees should have been paid to the date of actual payment. Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to the franchise fees due plus interest as calculated above. These liquidated damages shall be in addition to any other remedies AAMCO may have.

(o) use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO diagnostic forms, AAMCO warranty cards, AAMCO reporting forms and consecutively numbered AAMCO repair orders for which AAMCO may make a reasonable charge.

(p) offer to customers of his Center all services, products and/or warranties which AAMCO may prescribe. Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

9.    **Equipment, Inventory, Supplies and Signs.**

9.1    **Standards and Specifications.**  AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO Center.  Franchisee may purchase these items from any source, so long as they conform to these standards and specifications.  AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.  Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

9.2    **Original Equipment, Supplies and Inventory.**  Franchisee agrees that, prior to the opening of his Center, he will purchase the equipment, supplies and inventory listed at Appendix A of this Agreement.  Franchisee agrees to submit to AAMCO receipted invoices from the suppliers for any of these items which AAMCO may request and shall certify to AAMCO, if requested, that the items comply with the standards and specifications of AAMCO.    If Franchisee requests to purchase equipment and supplies from or through AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee.    If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quality, and adjust the price, after notice to Franchisee.

9.3    **Operating Inventory.**  Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets used by AAMCO Centers, and agrees that the use exclusively of parts and assembly sets which comply with AAMCO's specifications is an essential condition of the performance of this Agreement.  Franchisee agrees to purchase and use parts and assembly sets which comply with AAMCO's specifications.    At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications.

9.4    **Product Warranties.**  There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

9.5    **Signs.**  Franchisee agrees to erect outside and inside his Center signs of such size and construction as approved by AAMCO.  No other signs may be erected or used.  Franchisee acknowledges and agrees that AAMCO shall have exclusive control of the use and display of all sign faces bearing the AAMCO name or marks.

10.    **Franchise Fees and Business Reports.**

(a)  ~~During the term of this Agreement, Franchisee agrees to pay to AAMCO a franchise fee (the "franchise fee") equal to seven and one-half percent (7½%) of the gross receipts of all business transacted by Franchisee.~~  "Gross receipts" shall mean all forms of consideration received by the Center for all work, sale of parts, supplies or accessories or services, sold, completed and delivered to customers of the Center, exclusive of sales tax.  Franchisee agrees that the franchise fee shall be paid weekly on each Tuesday based upon gross receipts during the preceding calendar week.  The franchise fee shall be remitted simultaneously with a report showing its computation upon the forms or reports or in a format provided, required or approved by AAMCO.  Franchisee agrees that AAMCO may, require Franchisee to submit the reports via electronic polling from Franchisee to AAMCO through the internet or other electronic means which is compatible with software used by AAMCO for such purpose.  **SEE AMENDMENT**

(b)  Franchisee acknowledges and agrees that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks or to communicate with members of the motoring public who are customers of AAMCO Centers.  In addition to an accurate report of gross receipts in the manner or on the forms prescribed by AAMCO, Franchisee agrees to submit such copies of customer repair orders as directed by AAMCO.

(c)  Franchisee agrees that the franchise fee and all other fees, charges and/or amounts owed by Franchisee under this Agreement, specifically including, but not limited to, any sums due for any advertising, whether national, regional, local and/or national creative, pursuant to section 11 below, shall be remitted to AAMCO via electronic funds transfer ("EFT") from the designated account(s) of Franchisee's financial institution.  Prior to opening his/her Center, and from time to time thereafter as events may require, Franchisee agrees to provide AAMCO written authorization, and such other information as AAMCO may require, in such form as shall be approved by AAMCO, which shall authorize and/or enable Franchisee's financial institution to accept debit originations, electronic debit entries, or other EFT, and electronically deposit franchise fees and other sums owed under this Agreement directly to AAMCO's bank account(s).

(d)  Franchisee agrees to authorize AAMCO to withdraw funds by EFT upon or after the funds become due to AAMCO under this Agreement, at such days and times as AAMCO shall determine.  Franchisee agrees

that it shall be an event of default under section 19.1 of this Agreement if Franchisee closes or otherwise makes Franchisee's designated account(s) inaccessible by AAMCO without completing the following before or promptly after the account is made inaccessible:

(1) notifying AAMCO in writing of such event;

(2) establishing another designated account(s) for EFT withdrawals; and

(3) providing the written authorization and information required in subsection (c) above.

(e) Franchisee agrees that if AAMCO has not received from Franchisee, by 12 noon Eastern time on each Tuesday, a report of gross receipts from the Center's sales for the preceding week by written statements or business reports in the form prescribed by AAMCO under section 10 of this Agreement or by electronic polling, then AAMCO shall be entitled to withdraw by EFT from Franchisee's designated account(s) the appropriate franchise fee based on an arithmetic average of Franchisee's weekly gross sales reported to AAMCO over a number of previous weeks as determined by AAMCO or based on some other means of estimating Franchisee's gross sales as determined by AAMCO. If a business report in the form of a statement required under this section 10 is subsequently received and reflects (1) that the actual amount of the franchise fee due was more than the amount of the EFT by AAMCO, then AAMCO shall be entitled to additional funds by EFT from Franchisee's designated account(s) for the difference or (2) that the actual amount of the franchise fee due was less than the amount of the EFT by AAMCO, then AAMCO shall credit the excess amount to the payment of Franchisee's future franchise fee.

(f) Franchisee agrees that, upon written notice from AAMCO, he may be required to pay any amount(s) due under this Agreement directly to AAMCO by check or other non-electronic means, instead of by EFT, solely at AAMCO's discretion.

## 11. Advertising.

**11.1 National Creative Advertising.** Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions, including compliance with section 10(c) providing for payment by EFT.

**11.2 Local Advertising.**

(a) Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until such has been approved in writing by AAMCO. Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner. Franchisee further agrees to use, display or distribute in or about the Center any advertising, promotional or informational materials that AAMCO may provide from time to time and to follow AAMCO's instructions regarding such materials.

(b) Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level. Franchisee agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time and to execute all local ad pool documents as may be required and approved by AAMCO.

(c) Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

(d) Franchisee agrees that if Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool itself shall be entitled to recover the amount due from Franchisee. Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor. AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool to seek enforcement of this obligation.

(e) Franchisee may engage in any advertising or promotion of his Center or business, in addition to the advertising or promotion set forth in this section 11, provided that such advertising or promotion shall be at the sole cost of Franchisee.

(f) Franchisee agrees not to create, maintain or use a web site or other form of electronic media not paid for or approved in writing by AAMCO for the purpose of advertising or promoting his Center or business; not to create or adopt, use or register any domain name that uses in any manner, the AAMCO names and marks; and, not to establish any HTML or other link between any web site created, maintained or used by Franchisee and AAMCO's home page(s) or other part of its web site(s) without AAMCO's prior written approval.

### 11.3   National or Regional Advertising.

(a) Franchisee agrees to participate in advertising programs at the national and/or regional levels if and when established or directed by AAMCO. Franchisee agrees to pay his proportionate share of National or Regional Advertising and publicity in accordance with reasonable formulas provided by AAMCO. Payment for such National or Regional Advertising billings and costs shall be made in accordance with AAMCO's instructions.

(b) Franchisee agrees that AAMCO may, from time to time, designate an AAMCO web site for the purpose of advertising the AAMCO names and marks and services associated with the System as well as individual Centers. F ranchisee a cknowledges and agrees that all parts of the designated web site, including any web page(s) dedicated to his Center, are the property of AAMCO and that AAMCO has sole and exclusive right and authority to change or terminate the web site in total or in part, as AAMCO deems appropriate.

### 12.1   Insurance.

(a) Franchisee agrees to purchase and, at all times during the term of this Agreement, maintain in full force and effect policies of insurance as follows: (i) Worker's Compensation insurance, in amounts prescribed by law; (ii) insurance against a ll types of public liability i ncluding e mployer's liability i nsurance, liability insurance u nder a comprehensive general liability policy, with bodily injury and property damage liability insurance, garage liability, garage keeper's legal liability and direct primary coverage, products liability or completed operations liability insurance, automobile liability i nsurance, including owned and non-owned hired motor vehicles, and customer automobile l iability insurance; and (iii) such additional insurance as may be required by the terms of any lease for the premises of the Center.

(b) Franchisee agrees that all policies of insurance required under this section shall be in form with companies reasonably satisfactory to AAMCO and in such amounts as AAMCO shall reasonably determine, which amounts, in no event, shall be less than $1,000,000 per occurrence, bodily injury and property damage combined. Franchisee acknowledges and agrees that AAMCO reserves the right to increase the amounts of insurance required by this section and further agrees to comply with such increased amounts after notice from AAMCO. AAMCO agrees to act reasonably in determining such increased amounts. Franchisee agrees that such policies shall protect, as named insureds, Franchisee, AAMCO and any other party designated by AAMCO and that such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. Franchisee agrees to furnish to AAMCO, any other named insured, and all other persons designated by AAMCO, certificates issued by each of Franchisee's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty (30) days prior to the date of expiration of each such policy. Within five (5) days of any request by AAMCO, Franchisee agrees to deliver the original of all such insurance policies to AAMCO for examination.

(c) If Franchisee fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, AAMCO may, at its election, obtain and maintain such insurance for and in the name of Franchisee. Within fifteen (15) days of any written request of AAMCO, Franchisee agrees to furnish all information necessary to obtain and maintain such insurance and to pay all costs thereof.

### 12.2   Indemnity Agreement.
Franchisee agrees to protect, defend and to hold harmless and indemnify AAMCO from any and all claims, demands, losses, damages, costs, suits, judgments, penalties, expenses and liabilities of any kind or nature (collectively "Claims"), and to pay to AAMCO all costs, expenses and liabilities which may be associated with such Claims, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's Center or this Agreement. This agreement to indemnify AAMCO set forth in this section shall be given effect whether the Claim arises indirectly or directly out of the Center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents. The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement. Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

**12.3    Independent Contractor and Relationship of the Parties.**

(a) Franchisee acknowledges and agrees that the relationship between AAMCO and Franchisee is strictly that of a franchisor and a franchisee and Franchisee is an independent contractor and not an agent, employee, partner or joint venturer of AAMCO for any purpose whatsoever.  This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind nor obligate the other, except as expressly set forth in this Agreement.  Franchisee agrees that he is not authorized in any way to make a contract, agreement or promise, or to create any implied obligation on behalf of AAMCO and agrees not to do so.

(b) Franchisee agrees that, in all public records and in his relationship and dealings with third parties, as well as on stationery, letterheads and business forms, to indicate his independent ownership of the Center and that he is a franchisee of AAMCO.  Franchisee agrees to conspicuously display both inside and outside the Center a notification that the Center is independently owned and operated.

(c) Franchisee recognizes that AAMCO has entered into this Agreement in reliance upon and in recognition of the fact that Franchisee does and will have full responsibility and authority for the management and operation of the Center; and that his success, and that of all Centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous, workmanlike and satisfactory service to the public.

**13.1    AAMCO Names, Marks and Trade Secrets; Protection of the System.**

(a) Franchisee hereby acknowledges the validity of the AAMCO names and marks and that AAMCO is the owner of all right, title and interest in such names and marks.  Franchisee agrees that he will use the AAMCO names and marks only in full compliance with specifications prescribed from time to time by AAMCO and that all such usage and the goodwill established thereby shall inure to the exclusive benefit of AAMCO.  Except as expressly granted in this Agreement, Franchisee acknowledges and agrees that nothing contained in this Agreement shall be construed as giving to Franchisee or to any other person or entity, any right or interest in the AAMCO names and marks, trade secrets, methods, procedures or techniques developed by AAMCO and used in the System.  Further, except as provided for herein, nothing contained herein shall be construed as limiting AAMCO's right, title or interest in the AAMCO names and marks, trade secrets, methods, procedures and techniques which are a part of the System or AAMCO's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

(b) Franchisee represents, warrants and agrees that:

(1) he will not contest, directly or indirectly, AAMCO's ownership, title, right or interest in the AAMCO names and marks, trade secrets, methods, procedures and techniques which are a part of the System or contest AAMCO's sole right to register, to use, and to license others to use such AAMCO names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "AAMCO"; and

(2) with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the Center, he will not use or register or attempt to use or register in Franchisee's name or in the name of any other person or entity any name or mark, corporate name or any designation of any kind using the AAMCO names and marks, or any other materials or electronically transmitted information used in the System.

**13.2    Non-Disclosure.**  Franchisee agrees that, except in the ordinary course of business of the operation of his Center, he will not disclose or furnish to any person or entity any information or data concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO, and that he will keep and maintain such data, information and materials as trade secrets of AAMCO.  Franchisee acknowledges and agrees that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his Center.  Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

**13.3    Protection of System.**

If Franchisee learns of any actual or threatened infringement or piracy of the AAMCO names and marks, trade secrets, methods, procedures or techniques used in the System (the "Infringement") or of any infringement or piracy claim made against Franchisee by a party other than AAMCO ("Third Party Claim"), Franchisee agrees to immediately notify AAMCO in writing of the Infringement or Third Party Claim.  AAMCO shall have the right to determine what action, if any, to take with respect to such Infringement or Third Party Claim and shall bear the expense of any such action.

Franchisee agrees to give his full cooperation in such action if so requested by AAMCO.  If Franchisee is named as a party in any legal proceeding brought by a party other than AAMCO for infringement of trade names, trademarks, service marks, copyrights or trade secrets based upon Franchisee's use of the AAMCO names and marks, any such proceeding shall be defended and held harmless in the name of Franchisee, by and at the expense and direction of AAMCO.

**14.1    Warranty Program**.  Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his Center or at some other authorized AAMCO Center.  Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

**14.2    Warranty Payment Rates**.  Franchisee shall be entitled under this Agreement to receive from another AAMCO Center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor or a flat fee, depending on the extent of repairs required.  The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.  Franchisee agrees to immediately pay to any other AAMCO Center the amount due to such other Center for honoring of a warranty issued to a customer of Franchisee.  If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO Center, or to credit such other Center for money which may be due and owing to Franchisee for such payments.

**14.3    Prohibition Against Other Warranties**.  Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO.  Franchisee acknowledges and agrees such warranties and guarantees are made by Franchisee to the customer and that there are no warranties expressed or implied made by AAMCO to the customer or to Franchisee in connection with any product or service furnished under this Agreement.

**15.    Telephone Service.**

(a)  Franchisee acknowledges and agrees that all  published telephone numbers and directory listings for the Center are the property of AAMCO.  Franchisee may not make any changes to the local carrier, service or account name without the prior written authorization of AAMCO.  If AAMCO takes any action pursuant to this section 15, the telephone company and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive of the exclusive rights of AAMCO in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

(b)  AAMCO may transfer, suspend or remove Franchisee's telephone service for any published telephone numbers appearing under the AAMCO trade name or trademarks in directory listings, advertising and yellow pages advertising in the event of termination, rejection, expiration or rescission of this Agreement.

**16.    National Fleet Accounts Program.**

AAMCO, as part of the System, maintains a national fleet accounts program by which transmissions and other automotive repairs are provided to national or regional fleet accounts at designated AAMCO Centers, at agreed prices and processed through a centralized billing system ("national fleet accounts program").  If Franchisee decides to participate in AAMCO's national fleet accounts program, then Franchisee specifically agrees to accept and perform any automotive repair work that the vehicle may require in accordance with AAMCO's service standards, offer and honor such warranties as are required under AAMCO's agreement with the fleet account, charge and accept payment for all repairs in accordance with the price agreed between AAMCO and the fleet account for the particular type of repair, complete and provide such data, reports and/or documentation as AAMCO may require in administering the national fleet accounts program, and purchase and/or subscribe to any necessary hardware or software to interface with AAMCO's centralized billing system.  Franchisee agrees that AAMCO retains all rights to the software used in connection with the national fleet accounts program.

**17.    Defaults in Payment and Expenses.**

(a)  Franchisee agrees to pay all third party costs (and in-house attorneys fees if a court proceeding is instituted) incurred by AAMCO in collecting franchise fees, advertising fees and all other payments due under this Agreement and in enforcing the provisions of this Agreement.

(b)  Franchisee agrees to pay AAMCO a late charge upon all amounts due and owing to AAMCO in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month.  If a court of competent jurisdiction determines that the late charge violates any usury or similar law, then the late charge will, instead, be the maximum amount allowed under applicable law.  In addition, for each gross weekly business report not received by AAMCO within two (2) weeks from the date on which it was due, Franchisee agrees to pay AAMCO a late charge of ten

dollars ($10.00) per report, per week. The payment of any such late charge will not be deemed to allow or excuse delay in payment of sums due.

(c) Franchisee agrees that he is responsible for paying all service charges and other fees resulting from Franchisee's financial institution in connection with EFT including, without limitation, any and all service charges and other fees arising in connection with any EFT by AAMCO that is not honored or processed by Franchisee's financial institution for any reason. Further, Franchisee shall pay AAMCO a fifty dollar ($50.00) charge for reprocessing any EFT not originally honored or processed by Franchisee's financial institution.

(d) If a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 11 of this Agreement, then Franchisee acknowledges that such group or pool shall be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor. Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 11.1.

(e) If Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

**18.1    Restrictions on Change of Ownership.**

(a) Franchisee agrees that all rights, interests and obligations of Franchisee arising from or under this Agreement are personal to Franchisee and, except as otherwise provided in this section 18, Franchisee shall not, without AAMCO's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the franchise granted hereby, or in the lease for the premises at which the Center is located.

(b) If Franchisee, as an individual, desires to form a corporation, partnership or a limited liability company ("entity") for the operation of the AAMCO Center and to have rights under this Agreement, he may do so only upon the following terms and conditions:

(1) Franchisee's name remains on the Agreement and the entity is added as a co-franchisee on the Agreement.

(2) The entity is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3) Franchisee continues to devote his best efforts to the day-to-day operation and development of the franchise and the business of the Center.

(4) Franchisee is the owner of the majority of the stock, partnership interests or membership units of the entity, is the principal executive officer of the entity and has full and complete authority to act for the entity. In the event of the death of Franchisee who is the majority shareholder, partner or member of such entity, then the provisions of section 18.2 below will apply, except that such heir or next of kin must hold a majority interest in the entity, be a principal executive officer of the entity and must have full and complete authority to act for the entity.

(5) All money obligations of Franchisee under this Agreement must be satisfied.

(6) The entity executes a document with AAMCO in such form as shall be approved by AAMCO in which it agrees to be a party to, be bound by all the provisions of this Agreement.

(7) Franchisee remains personally liable in all respects under this Agreement and Franchisee and all officers, directors, shareholders, partners, and/or members of the entity with at least a twenty-five percent (25%) interest execute in form approved by AAMCO a personal guaranty and agreement not to further transfer the stock, partnership interests or membership units, except as otherwise provided for herein.

(8) The entity shall disclose in writing the names and addresses of all of its officers and directors, partners or members and, whenever there is a change in any such officer, director, partner or member, shall immediately notify AAMCO of such change. Franchisee acknowledges that AAMCO has the right to approve the officers, directors, partners and members, which approval shall not be unreasonably withheld, and agrees that any such individual

not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the entity or the AAMCO Center.

(c)   If Franchisee organizes or has organized a corporation, partnership or limited liability company in connection with the operation of the Center, the shares of stock, partnership interests or membership units shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of the shares of stock, partnership interests or membership units of the entity subject to the same conditions listed in subparagraph (b) above to a purchaser, as though the person acquiring were a purchaser under section 18.2 of this Agreement. All ownership certificates shall have endorsed upon them the following:

The transfer of this stock (or membership unit) is subject to the terms and conditions of a Franchise

Agreement dated _____ , 200__, between AAMCO Transmissions, Inc. and _____

(d)   Franchisee agrees that this Agreement may not be transferred by a corporation, partnership or limited liability company by transfer of stock, partnership interests, membership units or by any other means.

### 18.2   Sale, Assignment or Transfer.

(a)   Franchisee agrees to submit to AAMCO a copy of any written offer received to purchase the Center or a statement from Franchisee of the terms of the proposed sale and the identity of any proposed purchaser before execution of an agreement of sale.

(b)   If Franchisee dies and his personal representative does not desire to sell the Center, and if under controlling local law, the deceased Franchisee's interests in the Center, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law shall not be deemed in violation of this Agreement, provided that such heirs or legatees accept and fulfill the conditions imposed in section 18.2(c).

(c)   If Franchisee desires to sell his AAMCO Center, he may do so provided that the purchaser is first approved by AAMCO. AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that:

(1)   all prior, ascertained or liquidated debts of Franchisee in connection with the Center, including all sums due under the Franchise Agreement, specifically without limitation sums owed for franchise fees, local, regional, national, national creative or yellow page advertising, sums owed to an advertising agency, sums due other AAMCO Centers and any amounts due because of a default of any provision of this Agreement are paid concurrently with the assignment, sale or transfer;

(2)   all warranty, intershop and customer service obligations of Franchisee in connection with the Center are assumed by assignee, buyer or transferee;

(3)   Franchisee is not subject to an uncured notice of default under this Agreement and all monetary obligations to AAMCO or the applicable advertising pool are satisfied prior to or upon a sale, assignment or transfer;

(4)   the assignee, buyer or transferee, prior to the effective date of the assignment, sale, or transfer, satisfactorily completes the AAMCO training program required of new franchisees;

(5)   the assignee, buyer or transferee executes AAMCO's then current standard franchise agreement for a full fifteen-year term;

(6)   Franchisee, assignee, buyer or transferee, prior to the assignment, sale or transfer, pays to AAMCO its then current training fee and franchise issuance fee of six thousand dollars ($6,000) in connection with the administration and approval of such assignment, sale and issuance of a franchise to such assignee, buyer or transferee; and

(7)   Franchisee and all shareholders, partners, members or other person or persons having control of a corporate or similar entity shall execute a general release under seal of all Claims in favor of AAMCO and a termination of franchise.

(d) I f F ranchisee s ells h is A AMCO Center without the a id or assistance of AAMCO then the purchaser must sign a current form of franchise agreement.  The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee, or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid b y F ranchisee, and the s econd p ortion o f t he t erm w ill b e f or t he r emainder o f t he f ifteen ( 15) year t erm a t t he franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(e)  If Franchisee has listed his Center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department within the past 12 months, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

**18.3    Attempted Sale, Assignment or Transfer.**  If Franchisee attempts to sell, assign or transfer his AAMCO Center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void.  In the event that such attempted assignment or transfer is to an entity wholly or partially owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the entity that the attempted assignment or transfer shall subject the entity to all the terms and conditions of this Agreement.  Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO Center.

**19.1    Termination.**

(a)  AAMCO, at is option, and without prejudice to any other rights or remedies which it may have under this Agreement, at law or in equity, may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1) if Franchisee fails to complete the initial training p rogram to AAMCO's satisfaction, this Agreement will be terminated immediately; or

(2) if Franchisee is delinquent in the payment of the franchise fee or any advertising fee or sum, or any other payment due AAMCO or under this Agreement;

(3) if Franchisee shall be adjudicated a bankrupt or declared insolvent; if a temporary or permanent receiver of his property o r a ny part t hereof i s a ppointed b y a c ourt of c ompetent a uthority; if h e m akes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if Franchisee abandons the Center or ceases its operation for a period of more than five (5) consecutive business days;

(4) if Franchisee sells or attempts to sell, transfer or assign his rights in the Center and/or under this Agreement without the approval of AAMCO as required by this Agreement;

(5) if Franchisee terminates or attempts to terminate or rescind this Agreement for any reason;

(6) if Franchisee fails to make any payments to an advertising agency and/or a local advertising group or pool or to make any other advertising payment required by section 11 of this Agreement;

(7) if Franchisee defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the Center is located.

(8) if, Franchisee breaches paragraph 8(a) or 8(c).

(b)  Upon receipt of notice pursuant to section 19.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement.  For any other default, except as set forth below in sections 19.1(c) and (d), Franchisee shall have thirty (30) days within which to cure completely any such default.  Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination.  It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c)  Notwithstanding anything contained herein to the contrary, AAMCO shall not be required to give Franchisee notice in the case of a default under this Agreement or to afford Franchisee any period within which to cure the default, if, within twelve (12) months immediately preceding the occurrence of such default, Franchisee has been given notice of the same default under Section 8(a); 8(b); 8(i); 8(j); 8(l) or 8(o) of this Agreement or notice of failure to pay

any sum under this Agreement when due on three (3) prior occasions, whether or not such default has been cured. In such event, AAMCO may terminate this Agreement immediately and without prior notice of such default.

(d) Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the Center or upon a breach of section 8.1(a) or (c), shall be effective upon receipt by Franchisee, and the provisions of section 19.1(b) shall not be applicable thereto.

(e) If there are now, or hereafter shall be, other franchise agreements and/or notes, security agreements, other debt instruments, or other agreements in effect between AAMCO and Franchisee, a default by Franchisee under the terms and conditions of this or any other of such agreements shall, at the option of AAMCO, constitute a default under all such agreements.

**19.2    Effect of and Procedures after Termination.**

(a) Franchisee agrees that upon the termination or expiration of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of Franchisee's failure to renew as provided in section 3 (sometimes herein "expiration"), Franchisee shall cease to be an AAMCO franchisee and shall:

(1) promptly pay AAMCO all amounts due and owing under this Agreement;

(2) immediately and permanently discontinue the use of all AAMCO names and marks, signs, structures, all forms of advertising, telephone listings and service, manuals, software and all materials and products of any kind which are identified or associated with the System or AAMCO and return all such materials and products, including without limitation, the Operator's Manual, to AAMCO;

(3) thereafter make no representations or statements for commercial benefit that Franchisee is or ever was in any way approved, endorsed, associated or identified with AAMCO or the System in any manner whatsoever or that Franchisee is a former AAMCO franchisee; provided, however, Franchisee shall honor all customer complaints made within the applicable warranty period arising from work performed at the Center;

(4) immediately take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the AAMCO names and marks in order to effectuate the removal of the AAMCO names and marks from such registration or filing; and

(5) thereafter refrain from establishing any HTML or other link between any web site created, maintained or used by Franchisee and AAMCO's home pages(s) or other part of its web site(s).

(b) Upon termination or expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the Center and all equipment contained therein. If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention within ten (10) days of the time of termination or in the case of expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the Center shall be:

(1) in the case of expiration, the fair market value of the equipment and parts then located at the Center less all outstanding liabilities of the Center;

(2) in the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the Center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight line basis, less all outstanding liabilities of the Center. AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the Center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine. In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or the Center and Franchisee shall remain responsible for all outstanding debts and liabilities of the Center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds;

(3) "Fair Market Value" as used in this section 19.2, shall be determined by an appraisal from an independent third party acceptable to both AAMCO and Franchisee, the costs of which shall be borne equally by AAMCO and Franchisee.

(c) If, within five (5) days after termination or expiration, Franchisee fails to remove all displays of the AAMCO names and marks and any other materials of any kind from the Center which are identified or associated with the System or AAMCO, AAMCO may enter the Center or premises to effect such removal. In such event, AAMCO shall have no liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d) If, within three (3) days after termination or expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the AAMCO names and marks, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court, or attorney of any court of record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the AAMCO names and marks, without liability to Franchisee for so doing. If any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19.2(d), the telephone company and all listing agencies and publishers, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive of the exclusive rights of AAMCO in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company, publisher or listing agency as a result of their implementing the transfer, amendment or termination set forth herein.

(e) Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which AAMCO may have against Franchisee, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

(f) Franchisee hereby irrevocably authorizes AAMCO to enter upon and take possession of the Center and to take, in the name of Franchisee, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and AAMCO shall not be liable in any manner to Franchisee for so doing.

**20.    Covenant Not-to-Compete.**  Franchisee acknowledges that as a franchisee of AAMCO and a participant in the System, Franchisee will receive or have access to confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his Center is located is solely as a result of the AAMCO name and marks. Therefore, to protect the System, the AAMCO name and marks and AAMCO, and to induce AAMCO to grant Franchisee the franchise set forth in this Agreement, Franchisee represents and warrants:

(a) Except for the business contemplated by this Agreement or except as approved by AAMCO pursuant to section 8(e) above, during the term of this Agreement, Franchisee shall not engage in any business the same as, similar to, or in competition with any Center, AAMCO or the System.

(b) For a period of two (2) years after the termination of this Agreement for any reason, which two-year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 20, Franchisee shall not:

(1) within a radius of ten (10) miles of Franchisee's former Center and ten (10) miles of any other Center in operation at the time of termination or any Center that has commenced operation during the two-year period, begin or engage in any business the same as, similar to or in competition with such Center, except for a business previously approved by AAMCO pursuant to section 8(e); or

(2) within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, AAMCO or the System, except for a business previously approved by AAMCO pursuant to section 8(e) above.

(c) As used in subsections 20(a) and 20(b) above:

(1) "engage in" shall include, but not be limited to, activities, whether direct or indirect, as an individual proprietor, partner, shareholder, director, officer, principal, broker, agent, employee, consultant, lender, unless such activities are directly as a result of the sale of the AAMCO Center pursuant to this Agreement; and

(2) "in competition with" shall include, but not be limited to:

(i) the request of any present or future supplier, customer or operator of a Center to curtail or cancel its business relationship with any Center, AAMCO or the System, (ii) the disclosure of the identity of any past, present or future customer, supplier or operator of any Center, and (iii) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a Center. As used in this section 20(c)(2), "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a Center, AAMCO or the System during the term of this Agreement or during a period of one (1) year following the termination of this Agreement.

(d) Franchisee acknowledges that, in view of the nature of the System, the business of AAMCO, and the strength of the AAMCO names and marks, the restrictions contained in this section 20 are reasonable and necessary to protect the legitimate interests of the System and AAMCO and that any violation of such restrictions will result in irreparable injury to the System or AAMCO.  Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which AAMCO shall be entitled, and the arbitration provision of section 28 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 20. If Franchisee violates any restriction contained in this section 20, and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect until two (2) years after such relief is granted.

(e) Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

### 21.    No Waiver.

Waiver by AAMCO or Franchisee of any violation or default under this Agreement shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by AAMCO of any payment from Franchisee after the date on which such payment is due shall not operate as a waiver of Franchisee's default or violation hereunder nor alter or impair AAMCO's rights with respect to such violation or default.

### 22.    Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns.  AAMCO shall have the right to assign its rights, interests and obligations under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by AAMCO under this Agreement.

### 23.    Notice.

Whenever this Agreement requires notice, it shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested, or by a recognized overnight carrier addressed to the party to whom it is directed at the address set forth above or at such other address as one party shall provide to the other in writing. All notices shall be effective three (3) business days after being deposited, postage prepaid, or upon the date of actual receipt or rejection, whichever shall occur first.

### 24.    Risk of Operations.

Franchisee acknowledges that there are uncertainties inherent in all business ventures.  Franchisee acknowledges that he has conducted a thorough and independent investigation and, based on that investigation, desires to enter into this Agreement and undertake the business of owning and operating an AAMCO Center.  Franchisee agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to Franchisee, either by AAMCO or anyone acting on its behalf or purporting to represent it, including, without limitation any such representations or warranties relating to the prospects for successful operations, the level of business, sales or profits that Franchisee might reasonably expect, the desirability, profitability or expected traffic volume or profit of the Center (whether or not AAMCO assisted Franchisee in the selection of the location of the Center), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the Center or as to the quality of any products or services to be sold by Franchisee to its customers.  Franchisee acknowledges that all such factors are necessarily dependent upon variables beyond AAMCO's control, including without limitation, the ability, motivation and amount and quality of effort expended by Franchisee.

### 25.    Severability.

If any portion, term or provision of any section of this Agreement shall be decided by any court to be in conflict with the law of any state or jurisdiction, the conflicting term or provision shall be construed in accordance with the specific provisions of the applicable law, and the remaining portions, terms or provisions of the section, as well as the remainder of this Agreement, shall remain in full force and effect.

26.   **Jurisdiction, Venue and Controlling Law.**

**26.1**   This Agreement and all related agreements have been entered into in the Commonwealth of Pennsylvania and any matter whatsoever which arises out of or is connected in any way with the Agreement or the franchise granted shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

**26.2**   With respect to any legal proceedings arising out of or connected in any way to this Agreement or the franchise, Franchisee and AAMCO consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts and not in any other courts.  The parties further agree that the mailing by certified or registered mail, return receipt requested or by an overnight carrier service that provides a receipt to such party's last known address of any process shall constitute lawful and valid process.

**26.3**   In any court proceeding brought by either party arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

27.   **JURY WAIVER.**

FRANCHISEE AND AAMCO HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

28.   **Mediation and Arbitration.**

(a) Non-binding mediation of disputes, controversies or claims arising out of or related to this Agreement shall be conducted, solely at Franchisee's option, in Philadelphia, Pennsylvania, Chicago, Illinois or Bethesda, Maryland in accordance with established procedures.

(b) All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor, except for termination by AAMCO which is based, in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the Center or Franchisee's failure to accurately report his gross receipts to AAMCO or actions for equitable relief related to the uncured misuse of proprietary marks, confidential information or other intellectual property of AAMCO or Franchisee's non-compliance with the covenant not-to-compete.  Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.  The decision of the Arbitrator shall be final and binding on the parties and judgment upon the award may be entered in any court having jurisdiction.  Each party shall be responsible for the payment of his or its legal expenses and the fees and expenses of arbitration except that the fee of the Arbitrator shall be paid by the non-prevailing party.  The Arbitrator shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.  The parties specifically acknowledge and agree that no class action claims shall be filed in any such arbitration proceeding pursuant to the terms of this Agreement.

29.   **Entire Agreement.**

This Agreement contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement.  There are no representations, warranties, promises or inducements, either oral or written, except those contained in this Agreement.  Except as set forth in section 7.3, this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

ATTEST:                                               AAMCO Transmissions, Inc.

_____          BY: _____(Seal)
                                                                Todd P. Leff, President

Witness:                                              Franchisee: Todd A. Cox

_____          _____(Seal)

## AMENDMENT TO FRANCHISE AGREEMENT

This Amendment, made as of this 29th day of January, 2007, by and between AAMCO TRANSMISSIONS, INC. (AAMCO) and Todd A. Cox. (Franchisee).

WHEREAS, the parties have entered into a written Franchise Agreement as of this date under which Franchisee is granted the right to operate an AAMCO transmission repair shop at 10502 IH 35N, San Antonio, Texas; and

WHEREAS, the parties desire to amend the Franchise Agreement.

NOW, THEREFORE, for and in consideration of the mutual agreements contained herein, and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Paragraph 2. License Fee does not apply to resale centers and is deleted.

2. Paragraph 10.(a) Franchise Fees and Business Reports is amended by deleting the first sentence and adding the following:

During the term of this Agreement, Franchisee agrees to pay to AAMCO a franchise fee (the "franchise fee") equal to Seven percent (7%) of the gross receipts of all business transacted by Franchisee.

3. All other terms and conditions of the Franchise Agreement as amended remain in full force and effect.

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have set their hands and seals as of the date first above written.

AAMCO TRANSMISSIONS, INC.

ATTEST:

_____          By:_____

_____          _____
Witness                                   Franchisee — Todd A. Cox

# EXHIBIT C

LOOK FOR VALUABLE COUPONS IN THE ENTIRE SECTION

# AAMCO
## TRANSMISSIONS

## WE HONOR MOST EXTENDED WARRANTIES

* Free Towing**
* Transmissions
* Engines
* Computer Diagnostics
* Tune-ups
* Oil Changes
* Brake Service
* Shocks/Struts
* Cooling Systems
* Air Conditioning/Heating
* Mufflers & Exhaust
* Alternators
* Starters
* Batteries

Locally Owned & Operated
Military Discount

Financing Available
Senior & Student Discount

Southeast
852-2657

Downtown
248-0046
10502 IH-35 N

775-1759
9018 Perrin-Beitel

ALL PHONES ANSWERED AT 9018 PERRIN-BEITEL

# AAMCO
## TRANSMISSIONS

## The Transmission & Complete Car Care Experts.

Convenience, Expertise and Value. As the world's largest chain of transmission specialists only AAMCO can provide the resources and knowledge to solve your transmission & automotive problems from coast to coast. AAMCO can help you control costs, get your vehicle serviced more quickly, keep it on the road longer, and offer the peace of mind of a nationwide warranty.

■ Competitive Prices
■ No Credit Check Plan*
■ FREE 2nd Opinion
■ Nationwide Warranties
■ Superior Quality
■ Exclusive Customer Service

SERVICE, REPAIR, OR REBUILD
■ Automatic & Standard
■ Front & Rear Wheel Drive
■ 4x4s ■ RVs ■ Differentials
■ Forklifts ■ Buses ■ CV Axles
■ Driveshaft ■ Clutches ■ Transfer Cases
*see for details

24/7
Emergency
Towing

Southside
247-0679

Northside
253-2452

253-2478
9018 Perrin-Beitel
1/4 Mile North of Loop 410

ALL PHONES ANSWERED AT 9018 PERRIN-BEITEL



# EXHIBIT D



**COMPLETE CAR CARE EXPERTS**

October 25, 2007

**Via Facsimile, Federal Express and U.S. Mail**

Todd Cox
dba AAMCO Transmissions
9018 Perrin-Beitel Road
San Antonio, TX 78217
Facsimile: (210) 653-4267

Todd Cox, Dwayne Byars & Darrell Byars
dba AAMCO Transmissions
1402 S. Seguin Avenue
New Braunfels, TX 78130
Facsimile: (830) 609-0434

Todd Cox
dba AAMCO Transmissions
10502 IH 35 N
San Antonio, TX 78233
Facsimile: (210) 946-0604

Todd Cox
dba AAMCO Transmissions
1206 Highway 123
San Marco, TX 78666
Facsimile: (512) 396-2127

Re:     **Breach of Franchise Agreements**

Dear Mr. Cox:

In addition to failing to comply with your financial obligations to AAMCO
Transmissions, Inc. ("ATI") set forth in detail in the three 10-day Notice to Cure letters
sent to you on October 23, 2007, it has come to the attention of ATI that in violation of
the terms of your franchise agreements with ATI you have independently placed non-
approved Yellow Pages listings relating to your centers.  Specifically, the franchise
agreements provide in pertinent part at paragraph 7.2 (Perrin-Beitel Road and New
Braunfels agreements) and paragraph 11.2 (San Marcos and IH 35 N agreements):

> "Franchisee specifically agrees to participate in and pay for the
> national Yellow Pages program of AAMCO and agrees not to
> place Yellow Pages advertising in any other manner."

Attached hereto is a Yellow Page listing placed by you in violation of the terms of
your franchise agreements.  First, you never sought nor received approval from ATI to
place this listing.  Second, the listing is misleading to the public in that it falsely infers
that you have six separate AAMCO locations in the San Antonio area, when this is not
the case.  Third, the listing is misleading to the public in that it falsely infers that in
addition to having centers at 9018 Perrin-Beitel Road and 10502 IH 35 N, you also have
centers in "Southside," "Northside," "Southeast" and "Downtown," when this is not the
case.  Fourth, this Yellow Page listing is separate from, and unfairly competes with, the

Todd Cox
October 25, 2007
Page 2

authorized Yellow Page listing placed in accordance with ATI's national Yellow Pages program. It appears that the Yellow Page listing placed by you is a blatant attempt to mislead the public by redirecting potential consumers to your centers and away from other AAMCO Transmission Centers that might be geographically more convenient to them.

ATI demands that you immediately arrange for the telephone numbers 247-0679 (Southside), 253-2452 (Northside), 852-2657 (Southeast) and 775-1759 (Downtown) to be transferred to ATI. If you agree to immediately address the unauthorized Yellow Pages listing issue in this manner, ATI will consider the violation of your franchise agreements caused by the placement of the unauthorized Yellow Pages listing to be cured. If you fail to cooperatively arrange to have those numbers transferred to ATI within the next 48 hours, ATI will promptly initiate legal action against you seeking, among other things, an order requiring that all of the telephone numbers associated with the unauthorized Yellow Pages listing be transferred to ATI. In addition, ATI will seek to recover damages from you for breach of contract, attorney fees, costs of suit, etc. ATI may also take other actions to enforce its rights under the franchise agreement including, but not limited to, terminating your franchise rights.

This letter is sent without prejudice to ATI exercising any other rights that it may have under the franchise agreements including, but not limited to, initiating legal proceedings against you to recover amounts owed to ATI pursuant to the franchise agreements and/or terminating your franchises for failing to cure non-payment defaults within 10-days of receipt of the Notices to Cure sent on October 23, 2007, referenced above.

Please contact me immediately to discuss and resolve the above issues.

Sincerely,

James Goniea
Vice President & General Counsel

attachment

cc:   Todd P. Leff
      Brian O'Donnell
      Michael Sumsky
      Jerry Ferrier
      Michael Pekula




# AAMCO

## TRANSMISSIONS

### WE HONOR MOST EXTENDED WARRANTIES

* Free Towing**
* Transmissions
* Engines
* Computer Diagnostics
* Tune-ups
* Oil Changes
* Brake Service
* Shocks/Struts
* Cooling Systems
* Air Conditioning/Heating
* Mufflers & Exhaust
* Alternators
* Starters
* Batteries

Locally Owned & Operated Military Discount

** Yale Transmission/Motor Overhaul

Financing Available Senior & Student Discount

Southeast
852-2657

248-0046
10502 IH-35 N

Downtown
775-1759

ALL PHONES ANSWERED AT 9018 PERRIN-BEITEL

# AAMCO

## TRANSMISSIONS

### The Transmission & Complete Car Care Experts.

Convenience, Expertise and Value. As the world's largest chain of transmission specialists only AAMCO can provide the resources and knowledge to solve your transmission & automotive problems from coast to coast. AAMCO can help you control costs, get your vehicle serviced more quickly, keep it on the road longer, and offer the peace of mind of a nationwide warranty.

- Competitive Prices
- No Credit Check Plan*
- FREE 2nd Opinion
- Nationwide Warranties
- Superior Quality
- Exclusive Customer Service

SERVICE, REPAIR, OR REBUILD
- Automatic & Standard
- Front & Rear Wheel Drive
- 4x4s ■RVs ■Differentials
- Forklifts ■Buses ■CV Axles
- Driveshaft ■Clutches ■Transfer Cases
*Ask for details

24/7 Emergency Towing

Southside
247-0679

253-2478
9018 Perrin-Beitel
1/4 Mile North of Loop 410

Northside
253-2452

ALL PHONES ANSWERED AT 9018 PERRIN-BEITEL